IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD D.  RICHWINE,

       Petitioner,

     v.                               No. CV 09-0870 JB/GBW

ANTHONY ROMERO, Warden,

       Respondent.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

## I.    INTRODUCTION

THIS MATTER is before the Court on consideration of Petitioner Richwine's

application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed September 9,

2009 (*doc. 1*), and Respondent's Answer (*doc. 8*) and Motion to Dismiss (*doc. 9*), both

filed October 15, 2009.

Petitioner seeks relief on the following claims: (1) there was insufficient evidence

to support Petitioner's conviction for trafficking cocaine; (2) Petitioner was improperly

charged with trafficking cocaine after originally being charged with manufacturing the

drug; (3) the state trial court erred in admitting photographs of alleged crack cocaine

paraphernalia at Petitioner's trial; (4) Petitioner was denied a fair sentencing hearing; (5)

Petitioner received ineffective assistance of counsel; (6) Petitioner's conviction was

tainted by prosecutorial misconduct; (7) the state trial judge was impermissibly biased against Petitioner; and (8) Petitioner receives inadequate legal material in prison. *Doc. 1.*

With respect to his ineffective assistance claim, Petitioner argues that Defense Counsel failed to: (1) conduct an adequate investigation; (2) consult with Petitioner; (3) present expert testimony at trial; (4) request a change of venue; (5) file a recusal motion prior to trial; (6) impeach damaging prosecution witnesses; (7) challenge and excuse for cause biased jurors; (8) challenge grand jury testimony; (9) request jury instructions on lesser-included offenses; (10) file an appeal on behalf of Petitioner; (11) rebut the prosecutor's remarks concerning Petitioner's prior criminal history; and (12) investigate and rebut prosecutor's statements about his financial status. *Id.*

Previously, this Court addressed Petitioner's claims and dismissed his petition without prejudice. *Docs. 37, 38.* This Court dismissed his petition on procedural grounds relating to the exhaustion requirement and without addressing the merits of his petition. *Id.* Now, on remand from the Tenth Circuit Court of Appeals, this Court addresses the merits of his petition.[1]

---

[1] In its order reversing the judgment in this case and remanding for further proceedings, the Court of Appeals directed this Court to "consider the propriety of addressing exhaustion despite the State's waiver." *Doc. 44*, Att. 1 at 8. While the Court of Appeals acknowledged that certain circumstances could justify such an approach, it would be an "unusual step" given the state's express waiver. *Id.* at 7-8. Having reviewed the arguments raised in the Petition, I see no reason to take such an "unusual step" in this case. Therefore, I recommend reviewing Petitioner's unexhausted claims on the merits and I have

I recommend that the Court dismiss the petition for habeas corpus on all claims.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Events before Petitioner's Trial

On May 3, 2007, law enforcement officers executed a narcotics search warrant at Petitioner's residence and, finding evidence of criminal violations, arrested him.  *Record Proper* (hereinafter "*R.P.*") at 129.  A woman, Evelyn Netzer, was with Petitioner at the time.  *Id.*  In an amended indictment, a grand jury indicted Petitioner on three counts: one count of Trafficking Controlled Substances (by possession with intent to distribute), N.M.S.A. 1978, § 30-31-20(A)(3), a second degree felony; one count of Possession of Marijuana (one ounce or less), N.M.S.A. 1978, § 30-31-23(B)(1), a petty misdemeanor; and one count of Use or Possession of Drug Paraphernalia, N.M.S.A. 1978, § 30-31-25.1(A), a misdemeanor.  *R.P.* at 59.  The original indictment contained the same charges as the amended indictment, but also included one count for possession of methamphetamine.  *R.P.* at 1.

The day after Petitioner's arrest, a local newspaper, the *Alamagordo Daily News*, ran on its front page a short article about Petitioner's arrest which included a picture showing Petitioner smoking a cigarette.  *Doc. 1*, Ex. G, Att. 3, Att. A; *see also Sentencing*

---

done so below.

3

*Hr'g* at 9:54.[2]  The front page contained five other stories, two of which described unrelated criminal activity.  *Id.*  Petitioner asserts that, because of this picture, he later instructed defense counsel to request a change of venue.  *Doc. 1* at 14.  Aside from Petitioner's assertion, the record contains no evidence of this request, and Petitioner does not state when he so directed Defense Counsel.  Defense Counsel did not move for a change of venue.

The trial judge for Petitioner's criminal trial, the Honorable Jerry Ritter, had previously presided over a child support case involving Petitioner.  *Id.* at 15.  Petitioner claims that he instructed Defense Counsel to file a motion for recusal because of these pictures, but again he does not say when he did so and the record contains no other evidence of such an instruction.  *Id.*  Defense counsel did not file a motion to recuse Judge Ritter.

**B.    Petitioner's Trial**

On October 11, 2007, in the Twelfth Judicial District, Otero County of New Mexico, in Case No. 1215-CR-200700276, Petitioner was tried before a jury on the three charges in his amended indictment.

During jury selection, attorneys for both sides questioned potential jurors. Defense Counsel exercised five peremptory challenges, the maximum allowed.  *Trial* at

_____

[2] The record contains audio recordings of the sentencing hearing and the trial, but not complete transcripts.  References are to the recordings and indicate the time of day at which the cited statements

4

10:08-10:13.  Defense Counsel challenged one potential juror for cause and the judge excused the challenged juror.

The jurors selected for Petitioner's trial included Jurors No. 5, 7, 20, 22, and 23. Juror No. 7's brother was a former law enforcement officer; she indicated that she could still be fair and impartial.  *Trial* at 9:33-34.  Juror No. 5's husband was an ex-police officer; she stated that she could still be fair and impartial.  *Id.* at 9:34.  Juror No. 20's son was a security policeman in the military; she stated that she could still be fair and impartial.  *Id.* at 9:35.  Juror No. 23 stated that she thought we were not winning the war on drugs, but also stated that this would not affect her impartiality.  *Trial* at 9:46.

Juror No. 22 stated that she knew Detective Wilder, one of the arresting detectives and one of the witnesses for the State, "through friends."  *Id.* at 9:15.  She stated that she could be a fair and impartial juror and would not find Det. Wilder more or less credible than any other witness.  *Id.*  She also stated that she knew Detective Hunter, who participated in the arrest and testified for the State at trial.  *Id.* at 9:12.  She stated that she knew him "through friends," and that it would not affect her as a juror. *Id.*  Furthermore, she stated that she had previously worked for the District Attorney's office and knew the Prosecutor from that employment, and that this would not stop her from being a fair and impartial juror.  *Id.* at 9:07-08.  She also stated that she had a

_____

were made.

5

professional relationship with Detective Yost, another witness for the State who participated in the search and surveillance of Petitioner and his property; she stated that this would not stop her from being a fair and impartial juror.  *Id.* at 9:17 and *R.P.* at 125.

Defense Counsel did not challenge any of these jurors for cause.

The state called four witnesses to testify at Defendant's trial: Detective Sergeant Lee Keith Wilder (*Trial* at 10:46), Detective Penny Yost (*Id.* at 11:42), Detective David Hunter (*Id.* at 1:15), and forensic chemist Holly Poole (*Id.* at 1:58).  Based on my review of the audio recording of the portions of Petitioner's trial in which these four witnesses testified, I will describe Petitioner's arrest and the events surrounding it, as well as what the police officers found in Petitioner's home.  Petitioner introduced no evidence at trial.

Prior to searching Petitioner's house, police officers observed people stop very briefly at Petitioner's home and then leave.  *Id.* at 11:02-11:06.  Detective Wilder testified that this was consistent with drug trafficking.  *Id.*  The police officers did not, however, detain, search, or question these people.  *Id.* at 11:48.

Five police officers, including the three detectives who testified at trial, executed a search warrant on Petitioner's house.  *Id.* at 11:06-11:07.  When they went to Petitioner's home to execute the search warrant, they went to his front door.  *Id.* at 11:06-11:07.  Four of the officers concealed themselves.  *Id.*  Detective Yost knocked on the door and said "It's Lisa."  *Id.* at 11:44-11:45.  Someone opened the door from the

inside; Detective Yost entered, announced herself, and instructed the occupants of the room to stay where they were. *Id.* The other four police officers entered as well, and the five of them searched the house. *Id* at 11:06-11:07.

As the officers entered the house, they found on their left a woman, Evelyn Netzer, seated in a recliner. *Id.* at 11:09. On their right, Petitioner sat on a couch. *Id.* The room contained a coffee table. *Id.* at 11:10. Various other items lay next to the couch. *Id.* at 1:24-1:28.

The first noteworthy item the officers observed was an ashtray on Petitioner's coffee table. *Id.* at 11:10. The ashtray contained what appeared to the officers to be two rocks of crack cocaine. *Id.* On observing this, the officers arrested, handcuffed and searched Petitioner. *Id.* at 11:10-11:12. In his pocket, they found a pill bottle of the kind used for prescription pills. *Id.* The pill bottle contained what the police officers believed to be crack. *Id.* In Petitioner's other pocket, the police officers found four twenty-dollar bills and two ten-dollar bills. *Id.* at 11:12-11:14. In Petitioner's bathroom, the officers found a Styrofoam cup containing four twenty-dollar bills and three five-dollar bills. *Id.* at 11:17-11:18. Detective Hunter testified that some users purchase crack cocaine in twenty-dollars increments. *Id.* at 1:18-1:19.

In Petitioner's home, the police officers found a second ashtray. *Id.* at 11:18-11:20. This ashtray, a photograph of which was introduced as State's Exhibit 7, had a residue

of some kind and scrape marks.  *Id.*  Based on the markings, Detective Wilder testified that he believed the ashtray had been used to cook powder cocaine into crack cocaine. *Id.* at 11:18-11:20.

The police officers found a third ashtray.  *Id.* at 11:20-11:23.  It had brass fittings that Detective Wilder stated made it suitable to use to smoke narcotics.  *Id.*  Detective Wilder stated that he believed it had been used to smoke marijuana.  *Id.*  Detective Wilder stated that this ashtray contained what he believed to be marijuana, and that a nearby glass jar also contained what he believed to be marijuana.  *Id.*

Next to Petitioner's couch, the officer's discovered various metal pipes with a black residue, glass pipes with residue, copper scouring pads, a propane torch, and a small quantity of tin foil cut into small pieces, and a pill bottle containing a white power.  *Id.* at 1:24-1:28.  Detective Hunter testified that crack is commonly sold in foil packets.  *Id.* at 1:34-1:35.  He testified that the white powder appeared to be baking soda, which is used in the production of crack cocaine.  *Id.* at 1:24-1:28, 1:51-1:52.  He testified that some of the copper scouring pads were discolored with a black residue and had been compressed into the shape of the metal pipes, suggesting that they had been used as filters by a person smoking crack from the metal pipes.  *Id.* at 1:24-1:28.

The police officers searched Netzer, the woman in Petitioner's recliner. *Id.* at 11:45-11:47. The contents of her purse included a twenty-dollar bill and what appeared to be a small quantity of crack. *Id.*

Holly Poole, a forensic chemist tested three items from the search. *Id.* at 1:58-2:02. She tested the bottle from Petitioner's pocket and found that it contained 12.59 grams of "cocaine base." *Id.* She tested the ashtray from Petitioner's coffee table and found that the two items it contained were in fact cocaine base weighing .45 grams. *Id.* She tested a third item; it did not test positive for anything. *Id.* Based on the audio recording of the trial, it is unclear to the Court what this third item was. Poole's testimony was confined to those three items, and the state introduced no other forensic evidence.

Detective Wilder testified that the quantity of crack cocaine found in Petitioner's possession would be sufficient for 60-70 hits and would be worth approximately $1,200. *Id.* at 10:58-10:59. He testified that such a quantity indicates trafficking. *Id.* at 11:23. Detective Hunter testified that users typically do not have more than $100 worth of crack on them at any time. Regarding the quantity of crack that Petitioner had, Detective Hunter testified that, in his experience, he had not encountered someone who had such a quantity of crack for personal use. *Id.* at 11:55.

Although the prosecutor argued, on the basis of these witnesses' testimony, that

Petitioner's possession of $195 in cash, mostly in $20 bills indicated drug trafficking,

Defense Counsel did not present evidence that this money came from an alternate

source.  Petitioner now provides documents suggesting that he had received a payment

of $231 from New Mexico's Income Support Division, because of a disability caused by

a respiratory disease, two days before his arrest.  *See doc. 1*, Ex. B.  According to

Petitioner, the State provided the money to Petitioner to help him pay for his

medication and to pay his utility bills.  *R.P.* at 177.  Petitioner also made this argument

regarding the source of the cash at his sentencing hearing.  *Sentencing Hr'g* at 9:45.

No grand jury testimony was introduced at trial.  Moreover, the State did not

introduce any evidence about Petitioner's prior criminal convictions.  *Trial* at 10:44:16-

10:49:32, 3:05:19-3:09:18.

Prior to jury deliberations, Defense Counsel requested various jury instructions.

*R.P.* at 111-122.  "Defense's Requested Instruction No. 10" stated:

> If you should have a reasonable doubt as to whether the Defendant
> committed the crime of "trafficking a controlled substance, to wit: cocaine,
> by possession with intent to distribute' you must proceed to determine
> whether the Defendant committed the included offense of 'possession of a
> controlled substance, to wit: cocaine."

*R.P.* at 120.  The trial court gave this to the jury as "Instruction No. 8."  *R.P.* at 74.

The jury convicted Petitioner on all three counts as charged.  *R.P.* at 64-66.  After

the jury had delivered its verdict, the judge ordered a presentence report.  *Trial* at 4:39.

10

The trial court ordered that Petitioner report to the adult probation office for a presentence interview.[3] *Id*. at 4:45-4:46.  The trial court also directed that Petitioner submit to weekly urine analyses. *Id.* at 4:45-4:46.  However, for Petitioner to be able to report to the detention center for such urine analyses, a furlough order had to be entered. *Sentencing Hr'g* at 9 :37-9:42.

### C.    Petitioner's Sentencing Hearing

Between trial and sentencing, Petitioner did not report for his presentence report interview.  Consequently, a presentence report was not prepared.  Petitioner states that he did not report because Defense Counsel failed to give him instructions as to when and where to report, despite Petitioner's repeated inquiries. *Doc. 1* at 6-7.  Defense Counsel implicitly conceded that Petitioner had been ordered to report to adult probation for his presentence interview. *Sentencing Hr'g* at 9:37-9:42.  However, Defense Counsel explained that Petitioner needs to be shown things in writing to remember them and Defense Counsel had not done this. *Id*. at 9:40-9:41.  With respect to the urine analysis, Defense Counsel explained that he had not submitted the stipulated furlough order to the court and thus the order had never been filed. *Id*. at 9:37-9:42.  As a result, Petitioner would not have been able to submit to urine analyses at the detention center.

---

[3] After reviewing the arguments at the sentencing hearing, it appears to the undersigned that convicted defendants are simply ordered to report to adult probation for a presentence interview.  No particular date or time is given, but the defendant is supposed to report soon after their conviction.  It is unclear whether the presentence interview is conducted immediately or the interview is simply

*Id*.

Defense Counsel argued that the judge should grant a continuance for the purpose of preparing a presentence report. *Id.* at 9:42. The judge denied the request for a continuance. *Id.* at 9:43.

The State argued that Petitioner's failure to report for the presentencing interview or for urine analyses was an aggravating factor. *Sentencing Hr'g* at 9:34-9:36. As other aggravating factors, the State discussed prior criminal charges and convictions, but did not claim that Petitioner had ever been convicted of a felony. *Id.* at 9:28-9:30. The State also discussed the harmful effect of drugs and the poor condition of Evelyn Netzer, the person who was in Petitioner's company at the time of his arrest. *Id.* at 9:30-9:34.

On behalf of Petitioner, Defense Counsel emphasized that the prosecutor had presented no direct evidence of trafficking at trial. *Id.* at 9:38-9:40. Petitioner also personally allocuted raising numerous points which he presumably hoped the court would consider mitigating. *Id.* at 9:43-48. He said he had conducted his life in a civilized manner. *Id.* at 9:43. He talked about having a severe physical disability, his chronic lung condition. *Id.* at 9:43-44. He talked about having served on juries. *Id.* at 9:44. He talked about an upcoming social security disability hearing relating to his

---

scheduled on that initial visit.

breathing disorder.  *Id*. at 9:44.  He told the judge that he had received a disability

payment shortly before being arrested, and that this was the source of the currency in

his possession at the time of his arrest and which was used as evidence by the State.

He told the court that he thought the jury had been told of his prior criminal

experiences and that this was why the jury convicted him.  *Id*. at 9:46.  He told court that

his family had always helped people, and that he had been helping the woman who

was in his company when he was arrested.  *Id.* at 9:47.  He stated that, "I'm drug free.  I

don't do any drugs."  *Id*.  He claimed that he did not receive an order from the court to

report for a presentence report, and that he was having dizzy spells due to his illness

during the last part of the trial when the court stated that there would be a presentence

report and urine analyses, and that he had no memory of any of this part of the

proceedings on account of the dizzy spells.  *Id.* at 9:48.

The prosecutor told the court that the judge had told Petitioner to report for a

presentence interview and for urine analyses, and that the judge had asked Petitioner if

he understood.  *Id.* at 9:50.  It must be noted that this assertion is not consistent with the

record.  While the judge did issue the order in Petitioner's presence, he did not ask if

Petitioner understood.  *See Trial* at 4:38-4:47.  The prosecutor argued that Petitioner

appeared not to have any remorse.  *Sentencing Hr'g* at 9:52.

Defense Counsel argued that Petitioner had in fact been quite ill (with "dizzy

spells") at trial.  *Id.* at 9:52.  Defense Counsel argued that Petitioner would not intentionally disobey orders, but that he had a lot of problems, and that these problems made it more difficult for him to follow orders.  *Id.* at 9:53.

The judge expressed displeasure with Petitioner.  *Id.* at 9:54-56.  The judge stated that he had previously been lenient with Petitioner in Petitioner's child support case, and that he was "very disappointed" with Petitioner.  *Id.*  He referenced the picture he had seen in the newspaper showing Petitioner smoking a cigarette while his home was searched, and how this undermined Petitioner's claims of breathing problems.  *Id.*   He said that he thought Petitioner was a "malingerer."  *Id.*  He said he believed that Petitioner was "entirely untrustworthy about the extent of his [breathing] obstruction." *Id.*  He questioned the extent of Petitioner's illness, and stated that he suspected Petitioner exaggerated his medical condition for effect.  *Id.* at 9:55.  He expressed dissatisfaction with Petitioner's excuses for not reporting for a presentence interview. The judge stated that he had told Petitioner to report for a presentence interview.  He further stated:

> I have no trust in [Petitioner] Mr. Richwine and no desire to continue to go through the same sorts of problems that I've dealt with in the child support case and in this case with him failing to show up for a presentence report when he was told by me, in court, go do it.  He was asked and said he understood.  I think he should serve the nine years.

*Id.* at 9:55-56.

The judge sentenced Petitioner to nine years.  *R.P.* at 177.  Nine years is the basic sentence for a second degree felony (*see* N.M.S.A 1978, § 31-18-15(A)(6)), the category of Petitioner's trafficking offense.  At sentencing, a judge has the power to increase or decrease such a sentence based on aggravating or mitigating factors (*see* N.M.S.A. 1978, § 31-18-15.1(A)).[4]  In this case, the judge heard arguments of both aggravating and mitigating circumstances, but sentenced Petitioner to the basic sentence of nine years.

### D.    After Petitioner's Sentencing Hearing

After sentencing, Petitioner, concerned that his attorney would not timely file an appeal, filed *pro se* a "Notice of Appeal."  *R.P.* at 194.  Later, Defense Counsel filed a "Docketing Statement."  *R.P.* at 200.  The New Mexico Court of Appeals heard Petitioner's appeal.

In the docketing statement, Petitioner challenged: (1) sufficiency of the evidence to support his convictions; (2) whether he should have been convicted of "trafficking" a controlled substance when the charging document allegedly said "manufacturing"; (3) whether he should have been convicted of trafficking a controlled substance when there

---

[4] "The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aid it in reaching a decision to alter a basic sentence. The judge may alter the basic sentence as prescribed in Section 31-18-15 NMSA 1978 upon:

(1) a finding by the judge of any mitigating circumstances surrounding the offense or concerning the offender; or

(2) a finding by a jury or by the judge beyond a reasonable doubt of any aggravating circumstances surrounding the offense or concerning the offender."  N.M.S.A. 1978, § 31-18-15.1(A).

was no evidence of sale or conveyance to another; (4) whether the trial court erred by

denying Petitioner's motion to continue his sentencing; (5) whether the trial court

prejudged Petitioner as evidenced through comments made during sentencing; and (6)

whether the trial court erred in admitting and publishing photos of alleged

paraphernalia to the jury. *Doc. 1*, Ex. G, Att. 4.

Later, Petitioner attempted to amend his docketing statement to include claims of

ineffective assistance of counsel. *Id.*, Att. 5. The New Mexico Court of Appeals denied

the motion to amend finding that the record was insufficient for review of the

ineffective assistance claims on direct appeal. *Id.*, Att. 6. The Court of Appeals then

affirmed his conviction in a Memorandum Opinion on December 4, 2008. *Id.*

Subsequently, Petitioner filed a petition for a writ of certiorari with the New Mexico

Supreme Court, in which he raised the same arguments made to the Court of Appeals.

*Id.*, Att. 7. The New Mexico Supreme Court denied certiorari on January 7, 2009. *Id.*,

Att. 8.

Following this denial, Petitioner filed a *pro se* petition for a writ of habeas corpus

in the Twelfth Judicial District of New Mexico on March 13, 2009. *Id.*, Att. 10. In his

state habeas petition, Petitioner presented claims for the following: (1) prosecutorial

misconduct; (2) various instances of ineffective assistance of counsel; and (3) judicial

bias and abuse of discretion. *Id.* The district court denied the petition on April 1, 2009.

*Id.*, Att. 11.  Petitioner petitioned for a writ of certiorari from the New Mexico Supreme Court, seeking review of the denial; the New Mexico Supreme Court denied the petition for certiorari on May 8, 2009.  *Doc. 26*, Exs. A, B.

On September 9, 2009, Petitioner filed his federal habeas petition, the petition now at issue, with this Court.  *Doc. 1.*  Petitioner alleges: (1) his conviction for trafficking cocaine was supported by insufficient evidence; (2) at trial, he was improperly charged with trafficking cocaine after he had originally being charged only with manufacturing; (3) the trial court erred in admitting photographs of alleged paraphernalia to produce crack cocaine; (4) the trial court denied him a fair sentencing hearing; (5) his defense counsel at trial provided him ineffective assistance of counsel in twelve ways; (6) prosecutorial misconduct tainted his conviction; (7) the state trial judge was impermissibly biased against him; and (8) he now receives inadequate legal material in prison.  *Doc. 1.*

## III.   REVIEW OF PETITIONER'S CLAIMS ON THE MERITS

### A.   Unexhausted Claims

Petitioner's unexhausted claims are four claims of ineffective assistance of counsel.  Petitioner claims that Defense Counsel ineffectively assisted him by failing to: (1) file a motion to recuse the trial judge; (2) challenge and excuse for cause biased jurors; (3) rebut the prosecutor's remarks concerning his prior criminal history; and

(4) investigate and rebut the prosecutor's statements about Petitioner's financial status.

Since Petitioner did not assert any of these claims in his state habeas petition, they

remain unexhausted.  Because these claims are not exhausted, there is no state decision

on the claims to which to defer.  Thus, these claims are reviewed *de novo*.  *See Douglas v.*

*Workman*, 560 F.3d 1156, 1170-71 (10th Cir. 2009).

## 1.   The *Strickland* Test for Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is addressed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984); *see also Osborn v. Shillinger*, 997 F.2d 1324,

1328 (10th Cir. 1993).  There are two prongs to this test.  For Petitioner to succeed on a

claim of ineffective assistance of counsel, he must demonstrate that (1) "counsel's

performance was deficient," and (2) "that the deficient performance prejudiced the

defense."  *Id.* at 687.  Both prongs must be satisfied to succeed on a claim of ineffective

assistance of counsel.  *Id.*

With respect to the first prong, "[f]or counsel's performance to be

constitutionally ineffective, it must have been 'completely unreasonable, not merely

wrong, so that it bears no relationship to a possible defense strategy.'"  *Le v. Mullin*, 311

F.3d 1002, 1025 (10th Cir. 2002) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir.

1995)).  In fact, Petitioner must show "that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Strickland*, 466 U.S. at 687 (*quoted in Premo v. Moore*, 131 S.Ct. 733, 739 (2011)). To satisfy the second prong, Petitioner must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

> ### 2.   The Four Unexhausted Claims of Ineffective Assistance of Counsel under *Strickland*
>
> #### a.   Counsel's Failure to Move to Recuse Trial Judge

Petitioner claims that he requested that Defense Counsel recuse the trial judge, and, by failing to do so, Defense Counsel was ineffective. *Doc.* 1 at 14-15. In a New Mexico state court, a party can peremptorily challenge the district judge assigned to their case. N.M.S.A. 1978, § 38-3-9.[5] Therefore, had Defense Counsel made the challenge, the Petitioner's case would have been presided over by a different judge.

To satisfy *Strickland*'s first prong, Petitioner must establish that counsel's failure to make the request was "completely unreasonable." Assuming that Petitioner indeed asked his counsel to recuse the trial judge, the first question is whether, by ignoring his

---

[5] A party may excuse only one district judge in this manner. N.M.S.A. 1978, § 38-3-9. It is not clear that Petitioner could have excused Judge Ritter via this statute because Petitioner claims to have recused the first district judge assigned to his case, Judge Richard Stokely. *Doc. 1* at 3. However, given the lack of clarity on this issue, I will assume that Petitioner could have peremptorily excused Judge Ritter.

client's request, Defense Counsel's action was *per se* unreasonable.  The answer depends

on whether the decision to recuse a trial judge is ultimately the defendant's or a trial

strategy decision for counsel.

As Chief Justice Burger observed, "[o]nce counsel is appointed, the day-to-day

conduct of the defense rests with the attorney.  He, not the client, has the immediate

and ultimate responsibility of deciding if and when to object, which witnesses, if any, to

call, and what defenses to develop." *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977)

(concurring) (*cited with approval in Holmes v. McKune*, 59 Fed. Appx. 239, 250 (10th Cir.

2003))  He further explained that "[o]nly such basic decisions as whether to plead

guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to

make."  *Id*. at 93, n. 1; *see also Florida v. Nixon*, 543 U.S. 175, 187 (2004) (asserting same list

as ultimately resting with the accused plus whether to appeal); ABA STANDARDS FOR

CRIMINAL JUSTICE 4-5.2 (3d ed. 1993) (listing same as Chief Justice Burger's plus whether

to accept plea agreement and whether to appeal).  Clearly, the decision regarding

judicial recusal is not on that list and this Court can find no authority that such a

decision is ultimately for the defendant.  To the contrary, courts have reviewed

decisions about recusal as falling within "trial strategy" to be made by counsel.  *See e.g.*

*United States v. Bayless*, 201 F.3d 116, 130-31 (2d Cir. 2000); see also ABA STANDARDS FOR

CRIMINAL JUSTICE 4-5.2 (3d ed. 1993) (stating that decisions not ultimately for accused

should be made by defense counsel after consultation with the client and, while not explicitly listing judicial recusal, including "what jurors to accept or strike").

Based upon this authority, I conclude that the decision to seek judicial recusal is ultimately a trial strategy decision for counsel after consulting with his client. Therefore, just because Defense Counsel did not follow Petitioner's request, his conduct was not *per se* unreasonable.  So, the question becomes whether counsel's decision not to recuse the trial judge "amounted to incompetence under 'prevailing professional norms . . . .'"  *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

Three points support Defense Counsel's decision not to recuse the trial judge. First, because New Mexico's peremptory recusal statute only permits the recusal of one district judge, Defense Counsel would have been aware that he and his client would likely be "stuck with" whatever judge to which the case was reassigned.  While there is nothing in the record about the leanings of the possible alternate judges, Defense Counsel could very much have feared a "tougher" judge upon reassignment.[6]  Second, Defense Counsel could reasonably have concluded that the trial judge, having dealt with Petitioner in the child support case, would be more aware than other judges of Petitioner's medical history.  Knowing that medical problems often form the basis of mitigation arguments at sentencing, Defense Counsel could have believed that this

---

[6]  It must be remarked that the fact that trial lawyers are well-placed to have nuanced views about what judges might be better for their client in particular cases supports the idea that judicial recusal

familiarity would benefit his client.  Third, Defense Counsel could have reviewed Petitioner's child support case presided over by the trial judge and concluded, as the trial judge believed, that Petitioner's treatment at the hands of the trial judge was lenient.  Certainly, it would not be unreasonable to hope that the trial judge's prior leniency would be extended to the criminal proceedings.

Undeniably, the trial judge's statements indicate that the earlier leniency the judge had shown Petitioner did not lead to further leniency but instead increased the judge's frustration.  Nonetheless, the fact that, in hindsight, Defense Counsel's strategy may not have panned out does not mean he was constitutionally incompetent.  As the Supreme Court repeatedly reminds us, it "is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788 (citations omitted).  In Petitioner's case, I conclude that Defense Counsel's decision not to recuse the trial judge did not.  Thus, Petitioner has failed to meet the first *Strickland* prong.

Petitioner also fails to satisfy the second *Strickland* prong which requires that he demonstrate prejudice by showing that "there is a reasonable probability that, but for

---

decisions are part of trial strategy decisions ultimately left for counsel.

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Petitioner has made no argument nor presented any evidence that the outcome of his case would have differed under another judge.  *See Carabajal v. Lemaster*, 52 Fed. Appx. 473, 475 (10th Cir. 2002) (petitioner fails to establish prejudice when he presents only his "speculative belief that a different judge might have ruled more favorably…")  Petitioner does not argue that there was some ruling at trial or on a pre-trial motion that would have differed under another judge and thereby prevented his conviction.  Petitioner argues, by implication, only that another judge would have given him a lighter sentence.  Petitioner's belief is based upon the trial judge's comments at sentencing.  Admittedly, the trial judge did reject Petitioner's medical complaints as a basis for mitigation.  *Trial* at 9:54-9:56.  Moreover, the judge said that he was "very disappointed" with Petitioner given the previous leniency shown in the child support case.  *Id.*  However, despite this comments, the trial judge sentenced Petitioner only to the basic sentence under New Mexico law.  The judge did not depart upward on the basis of aggravating circumstances as he could have under New Mexico law.  *Id.*

It is true that the trial judge did not depart downward on the basis of mitigating circumstances as he could have.  However, it is pure speculation that a different judge would have done so.  In fact, under the facts of this case, a downward departure on the

basis of mitigating circumstances would seem unlikely before any judge.  Petitioner

never accepted responsibility for his criminal conduct.  Even at his sentencing hearing,

he was claiming that he was improperly convicted because (1) the cash in his possession

at the time of his arrest was a disability payment from the state and not drug proceeds,

and (2) the jury only convicted him because they heard about his prior convictions.[7]

*Sentencing Hr'g* at 9:43-9:49.  In fact, while Petitioner was rejecting the jury finding of

guilt, his remarks at sentencing hearing significantly undermined his claim of

innocence.  There is no dispute that Petitioner possessed a quantity of cocaine sufficient

for at least 60 doses and which was worth $1200.  Nonetheless, at his sentencing

hearing, Petitioner claimed to not use drugs.  *Id.*  If one accepts that assertion, then it

makes it more likely, not less, that the cocaine he possessed was intended for

distribution.  Moreover, Petitioner talked a great deal about how much he needed his

disability payment from the state, but gave no explanation for how he possessed $1200

worth of cocaine.  Simply put, even if a different judge was less skeptical about

Petitioner's medical problems, given his refusal to accept responsibility and his

inculpatory statements at sentencing, it is very unlikely a different judge would have

departed downward from the basic sentence.  Thus, Petitioner has failed to show

prejudice on this claim of ineffective assistance of counsel.

---

[7] It bears noting that, not only does this statement evidence Petitioner's failure to accept
responsibility for his crimes, it is demonstrably false.  Having reviewed the trial in its entirety, the jury

Because Petitioner has failed to establish either *Strickland* prong on this claim, I recommend its dismissal.

### b.    Counsel's Failure to Challenge Biased Jurors for Cause

Petitioner points to five jurors that he believes Defense Counsel was ineffective for not challenging for cause. *Doc. 1* at 19.   Three of those jurors had one family member who was employed in some law enforcement capacity.   One of the jurors (a) was a friendly acquaintance with three of the state's witnesses, (b) had previously been employed with the District Attorney's office, and (c) knew the prosecutor professionally due to her prior employment. *Trial* at 9:05-9:20.   The final "objectionable" juror stated that the government was not winning the war on drugs. *Id.* at 9:46.   Each of the jurors, when directly questioned regarding their potential bias, stated unequivocally that they would be fair and impartial. *Id.* at 9:05-10:00.

In New Mexico's state courts, challenges to jurors are governed under N.M.S.A. § 38-5-14.   Allowing counsel to dismiss a juror for cause is within the discretion of the court. *State v. Jacobs*, 10 P.3d 127, 136 (N.M. 2000).   It requires clear evidence of bias, and is unnecessary as long as the juror is sure she can evaluate the case without bias. *See, e.g., State v. Fry*, 126 P.3d 516 (N.M. 2005); *State v. Gardner*, 76 P.3d 47 (N.M. App., 2003).

Petitioner has not established that failure to challenge any of these jurors for

---

was never made aware of any of Petitioner's prior convictions whether they be misdemeanors or felonies.

cause was outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  With respect to the jurors with one family member in the law enforcement profession, given their answers about their impartiality, there is no basis to believe that they would not be impartial.  *See e.g. United States v. Morales*, 185 F.3d 74, 84 (2d Cir. 1999) (rejecting argument that jurors who were themselves law-enforcement officers or were closely related to law enforcement officers should be presumed to be partial).  Similarly, the juror who expressed skepticism regarding the "war on drugs" was not expressing any bias against Petitioner.  In fact, most consider that, if anything, such jurors are more critical of the government than defendant in a prosecution for a drug crime.  The final "objectionable" juror did know the prosecutor and several of the government's witnesses.  However, none of those relationships were close and the juror was unequivocal that she could be impartial.  Given these facts, it was not unreasonable for Defense Counsel to conclude that there was insufficient evidence of bias to merit challenges for cause as to these jurors.

Moreover, counsel's active participation in voir dire indicates that any decisions to challenge (or not to challenge) jurors were made as part of a reasonable trial strategy, rather than as a result of counsel's failure to provide effective assistance.  *See e.g. Warrick v. McLaughlin*, 2004 WL 1656579, at *4 (S.D.N.Y. July 22, 2004).  Defense Counsel exercised all five peremptory challenges to potential jurors and successfully challenged

one potential juror for cause.  *Id.* at 10:06-10:13.

Therefore, as to the failure to challenge jurors, Petitioner has failed to meet the first *Strickland* prong.

In any event, even assuming *arguendo* that Petitioner was able to prove that the decision to challenge any of these jurors was outside the range of professional competence, Petitioner cannot show that he was prejudiced thereby.  In order to show prejudice, Petitioner must show that a seated juror was actually biased against him. Petitioner has pointed to nothing in the record that would establish such bias.  As discussed above, regarding the jurors with relationships with law enforcement, Petitioner points to nothing else to establish bias.  He certainly has not overcome their unequivocal statements under oath that they could be fair and impartial.  In fact, with respect to the juror who knew the prosecutor and certain government witnesses, in addition to her general ability to be impartial, she specifically stated that those relationships would not impact her credibility decisions.  Finally, the statement from the juror regarding the "war on drugs" is patently insufficient to establish bias against Petitioner.  Therefore, Petitioner has also failed to meet the prejudice prong of *Strickland*.

Because Petitioner has failed to establish either *Strickland* prong on this claim, I recommend its dismissal.

### c.      Counsel's Failure to Rebut Prosecutor's Remarks Concerning Petitioner's Prior Criminal History

Petitioner states, "[b]ecause Defense Attorney failed to investigate and document Defendant's prior criminal record . . .  he was totally unprepared to dispute Prosecutor's statements at Jury Trial and Court's statements at pre-sentencing. . . . Defendant was not convicted of felonies; he was exonerated of all but minor charges.  <u>The Defendant had no prior felony convictions prior to this trial.</u>" *Doc. 1* at 13. (emphasis in original.) Petitioner does not further identify or point this Court to the particular statements that the prosecutor allegedly made at trial about Petitioner's criminal record.  In fact, having reviewed the trial recording, I could find no such statements.  With respect to the judge's statements at sentencing, he does not refer to any felony committed by Petitioner.

Accordingly, as I find that the record does not support this claim, I recommend that the Court dismiss it.

### d.      Counsel's Failure to Investigate and Rebut Inference about Source of Cash

One of the pieces of evidence used by the state to prove that Petitioner possessed the cocaine with the intent to distribute was the cash found at the time of his arrest. Specifically, the police officers found four twenty-dollar bills and two ten-dollar bills in Petitioner's pocket and, in his bathroom, the officers found a Styrofoam cup containing

four twenty-dollar bills and three five-dollar bills.  *Trial* at 11:12-11:14, 11:17-11:18.  The prosecutor argued that Petitioner's possession of $195 in cash, especially given the predominance of $20 bills, demonstrated that Petitioner had been selling crack cocaine. *See id*. at 1:18-1:19 (Detective Hunter testimony that crack cocaine was often sold in $20 increments); *see R.P.* at 129.

Petitioner, however, claims that the $195 were the remaining proceeds of a state financial assistance check for $231 that he had cashed the day before his arrest.  *Doc. 1* at 14; *see also doc. 1*, Ex. B.  According to Petitioner, this evidence would have significantly undermined the prosecution's case that he possessed the cocaine with the intent to distribute it.  Consequently, Petitioner argues that it was constitutionally ineffective for Defense Counsel not to present evidence of Petitioner's receipt of that check.

Petitioner again fails to establish either *Strickland* prong.  The decision about what evidence to present is of course the essence of trial strategy.  Under the facts of Petitioner's case, it appears completely reasonable for Defense Counsel not to present the evidence about the check.  Admitting evidence of the check and, thus establishing that Petitioner was receiving financial assistance from the state, would have two significant downsides.  First, it must be remembered that Petitioner does not dispute that he was in possession of $1200 worth of crack cocaine.  Once a jury heard that he was receiving welfare assistance from the state, it would seem a likely conclusion that

29

he could not afford to possess so much crack cocaine without being involved in its sale. Second, it is very possible a jury would be offended when it heard about Petitioner's involvement in illegal drugs while at the same time he was receiving public assistance. Moreover, even if the jury heard about the public assistance check, Defense Counsel would still have to explain the peculiar manner in which Petitioner held his money – in his pocket and in a Styrofoam cup in the bathroom. Otherwise, the jury is still left with an image which appears more consistent with drug dealing than legitimate income. Finally, even assuming the jury accepted Petitioner's explanation for the source of the cash, there would still remain other strong evidence of intention to distribute. So, introducing the evidence of the financial assistance payment would have had significant risk and low probable reward. Under these facts, I cannot conclude that it was constitutionally ineffective for Defense Counsel to forego introducing evidence of the financial assistance payment.

Not only does Petitioner fail to establish the first *Strickland* prong, but he also fails to establish the second prong by showing prejudice. As noted above, even discounting the argument that the cash showed that Petitioner sold crack cocaine, there remained other strong evidence of intent to distribute. First, there was the simple quantity of crack cocaine found in Petitioner's pocket. The evidence showed that it was worth $1200 and constituted 60-70 doses. *Trial* at 11:23. Two officers testified that

possession of such a quantity was completely out of the ordinary for a simple user of crack cocaine.  *Id.* at 11:55, 11:23.  Second, the officers testified that they observed various people enter and shortly thereafter leave Petitioner's home – conduct which was consistent with the selling of illegal drugs.  *Id.* at 11:02-11:06, 11:43-11:44.  Third, the small amount of crack cocaine in the possession of Ms. Netzer, Petitioner's house guest, when compared to the large amount found on his person supports the inference that Petitioner had distributed to Ms. Netzer.  *Id.* at 11:45-47, 1:48-1:49.  Finally, the presence of several small pieces of tin foil which, according to the testimony of the officers, is used to package crack cocaine supports the inference that Petitioner was distributing and not just using.  *Trial* at 1:29-1:35.

With all this evidence of intent to distribute, it is difficult to imagine that the result of the trial would have been different even if Defense Counsel had argued more effectively the source of Petitioner's $20 bills.  Accordingly, Petitioner has not established the second prong of the *Strickland* test on this claim.

Because Petitioner has failed to meet either *Strickland* prong, I recommend that the Court dismiss this claim.

**B.      Exhausted Claims**

Petitioner has raised the following exhausted claims in his federal habeas application: (1) there was insufficient evidence to support Petitioner's conviction for trafficking cocaine, (2) Petitioner was improperly charged with trafficking cocaine after originally being charged with manufacturing the drug; (3) the trial court erred by admitting photographs of alleged paraphernalia to produce crack cocaine at Petitioner's trial; (4) Petitioner was denied a fair sentencing hearing; (5) twelve separate grounds of ineffective assistance of counsel, eight of which are exhausted; (6) prosecutorial misconduct; (7) judicial bias; and (8) insufficient access to legal materials.

**1.      Standard of Review**

For claims that have already been reviewed by a state court, this Court must proceed under the deferential standard set out in 28 U.S.C. § 2254(d).[8]  Under § 2254(d), Petitioner must demonstrate that the state court's decision was (1) contrary to or an unreasonable application of clearly established Supreme Court precedent, or (2) an

---

[8]An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  *Id.*

Even summary dismissals of federal claims receive deference.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).  However, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id.*

Even if a federal habeas court finds that the state court decision was "contrary to" precedent or "unreasonable" and a violation of constitutional dimensions, habeas relief may not issue unless the violation is of a sort that warrants such relief.  *See, e.g., Williams v. Taylor*, 529 U.S. 362, 375 (2000) ("It is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas.").  If the Court determines "that the state court erred, [it] must still determine whether the error is a structural defect in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error" standards."  *Wilson v. Sirmons*, 536 F.3d 1064, 1073 (10th Cir. 2008) (quoting *Arizona v. Fulminante*, 449 U.S. 279, 309 (1991)), *rehearing en banc granted on separate issue*, 549 F.3d 1267 (10th Cir. 2008).

**Claim (1): There Was Insufficient Evidence to Support
Petitioner's Conviction**

Petitioner states, "The evidence was insufficient to support the Defendant's

conviction for possession of cocaine with intent to distribute." *Doc. 1* at 3.  Petitioner

freely admits that he had 12.59 grams of cocaine, but he insists it was for personal

consumption, not sale.  He insists that because "there was no direct evidence that the

cocaine was changing hands[,]" the state therefore could not prove its case beyond a

reasonable doubt.  *Id.*  He argues that, because the state brought no direct evidence of

trafficking, a conviction cannot stand.

Contrary to Petitioner's argument, as he was charged, the prosecution need not

prove that he **distributed** crack cocaine.  Petitioner was charged with trafficking a

controlled substance with **intent to distribute**.  Therefore, the State had to prove that

Petitioner had cocaine in his possession; that he knew or believed it to be cocaine; and

that he intended to transfer it to another.  *See* N.M.S.A. 1978 § 301-1-20(A); UJI 14-3111,

N.M.R.A.  Circumstantial evidence of such intent is sufficient.  *See, e.g., U.S. v. Ortiz-

Ortiz*, 57 F.3d 892, 895 (10th Cir. 1995) ("[A} criminal conviction may be sustained on

wholly circumstantial evidence.").  Furthermore, in considering the sufficiency of the

evidence, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

(1979).

The New Mexico Court of Appeals, in reviewing the evidence, stated that it asks "whether direct or circumstantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction.  We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *Doc. 1*, Ex. G, Att. 6 at 2 (*citing State v. Kent*, 140 N.M. 606, 609 (Ct. App. 2006))).  Thus, the court correctly identified the governing law.

In rejecting Petitioner's argument that the State failed to introduce any direct evidence of drug sale, the court correctly held that "[t]o the extent Defendant suggests the State introduced no direct evidence of drug sale, that is unnecessary." *Doc. 1*, Ex. G, Att. 6 at 5.  The court explained that a conviction may be supported by circumstantial evidence.  *Id.*  The court noted the testimony from two police officers that the 12.59 grams of crack cocaine found on Petitioner's person was a quantity consistent with trafficking and not with personal use.  *Id.* at 3.  Moreover, the court referenced the evidence that the crack cocaine had a street value of $1,200.00 and that it would provide approximately 60-70 hits.  *Id*.  The court also pointed to the testimony that a typical user purchase would be one rock for $20.  *Id*.  Finally, the court recalled the presence of foil packaging and the crack cocaine found on Ms. Netzer's person.  *Id*. at 3-4.  From these

facts, the court held that "the circumstantial evidence here would allow a rational jury to find that Defendant was trafficking cocaine." *Id.* at 5. The New Mexico Court of Appeals, reviewing the conviction for sufficiency of the evidence, found that "the evidence [was] sufficient to establish guilt beyond a reasonable doubt on every essential element of the crimes charged." *Doc. 1*, Ex. G, Att. 6 at 4.

Given the ample evidence of Petitioner's intent to distribute as identified by the state court and further described above, I find that the state court's decision was not (1) contrary to or an unreasonable application of clearly established Supreme Court precedent, nor (2) an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Therefore, I recommend that this claim be dismissed with prejudice.

### Claim (2): Petitioner Claims He Was Improperly Charged With Trafficking Cocaine after Originally Being Charged With Manufacturing

Petitioner states, "The Defendant was improperly charged with trafficking cocaine by possession with intent to distribute, after he was originally charged erroneously with manufacturing the drug." *Doc. 1* at 4. Just like the New Mexico Court of Appeals, I "remain uncertain about the contours of this argument." *Doc. 1*, Ex. G, Att. 6 at 5. There is nothing in the record to support that Petitioner was originally charged with manufacturing. A grand jury indicted Petitioner for trafficking cocaine in

both the original indictment and the amended indictment.  *R.P.* at 1, 59.  Perhaps the

claim arises from Petitioner's recollection of being offered a plea bargain to the charge

of manufacturing cocaine.  *Doc. 1* at 4.

In any event, the record shows that the grand jury, which has the power to bring

felony charges, properly indicted Petitioner on the charges for which he was tried.  *See*

*Buzbee v. Donnelly*, 634 P.2d 1244, 1248 (N.M. 1981).  The indictments provided the

defendant with "adequate notice of the charges and an opportunity to prepare his

defense."  *United States v. Lotspeich*, 796 F.2d 1268, 1273 (10th Cir. 1986).

Therefore, I find the state court's rejection of this claim to be reasonable.  I

recommend this claim be dismissed.

### Claim (3): Petitioner Claims That He Was Denied Due Process By The Inappropriate Admission of Photographic Evidence

Petitioner claims the trial court erred by admitting photographs of alleged

paraphernalia.  *Doc. 1*  at 5 ("The Trial Court erred in admitting photographs of alleged

paraphernalia to produce crack cocaine, after Defendant objected to the lack of

foundation.").  According to Petitioner, the prosecution introduced photographs of an

ashtray, and argued that the ashtray had been used to "cook" powder cocaine into

crack, but did not lay a foundation by testing the ashtray to verify that cocaine had in

fact been cooked in it.  *Id.*  Based on the record, it appears that Petitioner is referring to

"State's Exhibit 7."  *See R.P.* at 133.  One of the State's witnesses, Detective Sergeant Lee

Keith Wilder, reportedly described the photograph as an "ashtray located in living room, appears to be cocaine residue and scrape marks, appeared to be used to make cocaine into rock cocaine." *Id.*

Petitioner claims that admission of this evidence violated state evidentiary rules and caselaw. *Doc. 1* at 5. However, "federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Spears v. Mullin*, 343 F.3d 1215, 1225 (10th Cir. 2003) (quotations and citations omitted). An "evidentiary objection is cognizable on habeas only if the alleged error was 'so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Willingham v. Mullin*, 296 F.3d 917, 928 (10th Cir. 2002) (*quoting Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)).

Admission of this one photograph of the ashtray does not even approach meeting such a standard. First, it appears that the photograph was properly admitted based upon the testimony of the officers. *R.P.* at 133. Second, as the New Mexico Court of Appeals explained, even assuming the photograph was improperly admitted, "there was no reasonable probability that the admission of the photograph affected the verdict. There was ample evidence that Defendant possessed other items of paraphernalia [and there] was ample evidence that defendant was trafficking drugs." *Doc. 1*, Ex. G, Att. 6 at 7.

Accordingly, I find the state court's rejection of this claim to be reasonable and recommend that the Court dismiss this claim.

### Claim (4) Petitioner Claims That He Was Denied a Fair Sentencing Hearing Due to the Absence of a Presentence Report

After the trial and before sentencing, the court ordered a presentence report. *Doc. 1* at 6. This report was never made, because Petitioner never reported for the presentence interview. *Id.* According to Petitioner, he did not report because he was not advised of the time and place of the interview. *Id.* at 7. However, it is undisputed that Petitioner had been ordered to report to adult probation but did not do so. *See Trial* at 4:39-4:46; *Sentencing Hr'g* at 9:45-54. Defense Counsel moved for a continuance of the sentencing hearing to allow for another interview opportunity and the production of a presentence report, but the judge denied this request. *Id.* at 9:34-9:43; *Doc.* 1 at 7.

Petitioner first alleges that a pre-sentence report "would have provided the trial court with additional information about Defendant's medical condition [and] would have established that he was genuinely ill. *Doc. 1* at 8. For Petitioner to prevail on this basis, he must show a federal constitutional right to present mitigating evidence at sentencing. *See Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995) (no habeas relief where petitioner was sentenced immediately after trial despite defense counsel's motion for continuance of sentencing hearing). However, outside of capital cases, "no violation of a petitioner's Eighth Amendment or due process or equal protection rights

39

occurs when the trial court does not consider mitigating factors during sentencing." *Id*.

Petitioner next claims that a "presentence report would have cleared up a lingering dispute about the nature of prior charges that appeared in Defendant's record. Defendant maintains that he was exonerated of all but very minor charges." *Doc. 1* at 8. At sentencing, a defendant has a due process right that the information used to sentence him has "some minimal indicium of reliability beyond mere allegation." *United States v. Shewmaker*, 936 F.2d 1124, 1129 (10th Cir. 1991) (quotations omitted). Petitioner's general statement about clearing up "the nature of prior charges" does not establish that any information used at his sentencing failed to meet this low threshold. Moreover, upon a review of the sentencing hearing, it does not appear that anyone argued that Petitioner had a serious criminal history. *Sentencing Hr'g* at 9:37-9:30.

Therefore, I find the state court's rejection of this claim to be reasonable. I recommend this claim be dismissed.

### Claim (5): Twelve Separate Grounds for Ineffective Assistance of Counsel

As stated previously, Petitioner brings a total of twelve grounds for ineffective assistance of counsel, asserting that Defense Counsel was ineffective because he failed to: (1) conduct adequate investigation; (2) consult with Petitioner; (3) present expert testimony; (4) request a change of venue; (5) file a motion to recuse the trial judge; (6) impeach damaging prosecution witnesses; (7) challenge and excuse for cause biased

jurors; (8) challenge grand jury testimony; (9) request instructions on lesser-included

offenses; (10) file an appeal on behalf of Petitioner; (11) rebut the prosecutor's remarks

concerning his prior criminal history; and (12) investigate and rebut the prosecutor's

statements about his financial status. *Doc. 1.*

The four unexhausted claims (5), (7), (11) and (12) are addressed above.  The

eight remaining claims are addressed sequentially.  With respect to the exhausted

claims, the Supreme Court has explained that obtaining habeas relief for ineffective

assistance of counsel claims is extraordinarily difficult:

> The pivotal question is whether the state court's application of the
> *Strickland* standard was unreasonable.   This is different from asking
> whether defense counsel's performance fell below *Strickland*'s standard.
> Were that the inquiry, the analysis would be no different than if, for
> example, this Court were adjudicating a *Strickland* claim on direct review
> of a criminal conviction in a United States district court.   Under AEDPA,
> though, it is a necessary premise that the two questions are different. For
> purposes of § 2254(d)(1), "an *unreasonable* application of federal law is
> different from an *incorrect* application of federal law."   A state court must
> be granted a deference and latitude that are not in operation when the
> case involves review under the *Strickland* standard itself.   A state court's
> determination that a claim lacks merit precludes federal habeas relief so
> long as "fairminded jurists could disagree" on the correctness of the state
> court's decision.   And as this Court has explained, "[E]valuating whether a
> rule application was unreasonable requires considering the rule's
> specificity.   The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations."   …   "Surmounting
> *Strickland*'s high bar is never an easy task." … Establishing that a state
> court's application of *Strickland* was unreasonable under § 2254(d) is all
> the more difficult.   The standards created by *Strickland* and § 2254(d) are
> both "highly deferential," and when the two apply in tandem, review is
> "doubly" so.   The *Strickland* standard is a general one, so the range of

reasonable applications is substantial.  Federal habeas courts must guard
against the danger of equating unreasonableness under *Strickland* with
unreasonableness under § 2254(d).  When § 2254(d) applies, the question
is not whether counsel's actions were reasonable.  The question is whether
there is any reasonable argument that counsel satisfied *Strickland's*
deferential standard.

*Harrington*, 131 S.Ct. at 785-88 (citations omitted).

In addressing the ineffective assistance claims Petitioner brought in his state

habeas petition, the state court rejected them generally because (1) "[s]ome of his

criticisms are irrelevant to the conduct of the trial and events leading to his conviction,"

and (2) "[w]ith regard to conduct relating to trial, Richwine's claims are insufficient to

cast doubt on the validity of his conviction."  *Doc. 1*, Ex. G, Att. 11 at 1-2.  Essentially,

the state court ruled that Petitioner failed to establish the *Strickland* prejudice prong for

any of his ineffective assistance claims.

### IAC Claim (1): Failure To Conduct an Adequate Investigation

Petitioner states, "The trial Defense Attorney failed to conduct adequate

investigation . . . ."  *Doc. 1* at 11.  This bald claim is made in his state petition, so one

could consider it technically exhausted.  *Doc. 1*, Ex. G, Att. 10 at 5.  However, Petitioner

provides no basis for this claim separate from the arguments addressed above in

unexhausted ineffective assistance of counsel claims (11) and (12).  To the extent it is a

separate claim, I recommend dismissal for a lack of factual basis.

## IAC Claim (2): Failure To Consult With Petitioner

Petitioner states, "The trial Defense Attorney . . . did not consult with the Defendant." *Doc. 1* at 11.   Petitioner does not clearly identify the topics or issues about which counsel failed to consult with him.  Several communication issues are identified throughout the Petition, but these issues typically relate to some underlying claim.  For example, Petitioner's ineffective assistance of counsel claims (11) and (12) involve claims that his counsel failed to follow his directions.  To the extent that communication issues relate to an underlying claim, they have been considered as part of the underlying claim.  Doing so leaves one standalone "consultation" issue to address here – the claim that Defense Counsel failed to inform Petitioner of the date and time for his presentence report and urinalyses tests.  *Doc. 1* at 16-17.

To prevail, Petitioner would have to establish that the state court's determination that he suffered no prejudice from this alleged failure by his counsel was unreasonable.  The prejudice question begins with whether Judge Ritter would have departed downward from the basic sentence if Petitioner had appeared for his presentence interview and urinalyses tests.  A review of the sentencing hearing does not support such speculation.  *See supra* at 39-41.  Certainly, the state court's finding that no prejudice resulted from this alleged failure by counsel is not unreasonable in this case.  This conclusion is particularly true given that the state judge who reviewed the state

petition and found no prejudice was the very judge who sentenced Petitioner – Judge

Ritter.  *R.P, Order Summarily Denying Writ of Habeas Corpus*.

Under these facts, the state court's rejection of this claim was not unreasonable.  I

recommend that it be dismissed.

### IAC Claim (3): Failure To Present Expert Testimony

Petitioner claims: "The failure to retain expert witnesses caused a conviction of

the Defendant because an expert would have testified that the amount of Drugs found

was for personal use not for trafficking."  *Doc. 1* at 11.

In addition to rejecting this claim on the general finding of no prejudice, the state

court also noted that Petitioner failed to present any factual basis for the assertion that

"his attorney could have procured an expert witness to testify that the amount of

cocaine found by police was consistent with personal use rather than trafficking."  *Doc.

1*, Ex. G, Att. 11 at 2.  As in his state petition, Petitioner has failed to present any

evidence on this point.  Based on these facts, I find that the state district court did not

make "a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding."  Therefore, I recommend

dismissal of this claim.

### IAC Claim (4): Failure To Request a Change of Venue

Petitioner states, "Trial Defense Attorney failed to petition the court for a Change

of Venue after he was instructed to do so because of a front-page article describing the

Defendant's arrest appeared in the local newspaper." *Doc. 1* at 12.  Petitioner argues

that his picture so displayed could cause a juror to form a conscious or unconscious

bias, and that this is why his attorney should have requested a change of venue.  *Id.*

Unlike the other exhausted ineffective assistance of counsel claims, in addition to

being raised in his state petition, this claim was raised in the direct appeal.  *R.P.* at 185.

In denying the appeal, the New Mexico Court of Appeals appears to have held that

Petitioner failed to establish the first prong of an ineffective assistance claim noting that

such a motion is a "matter[] of tactics and strategy…."  *Doc.* 1, Ex. G, Att. 6 at 13.  More

clearly, the court concluded that Petitioner had failed to show prejudice for this alleged

failure explaining:

> Defendant has not demonstrated why a newspaper article at the time of
> Defendant's arrest on May 3, 2007 [RP 16] irreparably tainted a jury that
> was selected in October 2007 [RP 124], and we are provided with no
> evidence that the jurors were even aware of it. . . .  On the limited record
> before us, we conclude that Defendant has not met his burden to show
> that counsel's ineffectiveness resulted in a biased jury.

*Id.* at 13, 14.

As with the other ineffective assistance claims raised in the state habeas petition,

the state court denied habeas relief due to a failure to establish prejudice for the alleged

ineffectiveness of counsel.  *Doc. 1*, Ex. G, Att. 6 at 14.

Petitioner's federal Petition also fails to establish any prejudice for this alleged

failure by his counsel.  Specifically, Petitioner fails to show any of the following logical links in the chain of which all would be required to show prejudice: (1) that any juror saw the front page of that paper on the relevant day; (2) that they interpreted the photos as linking Petitioner to the other reported crimes; or (3) that they, as a result, still harbored some prejudice against Petitioner which would prevent them from being fair and impartial.  Under these facts, the state court's rejection of this claim was not unreasonable.  I recommend that it be dismissed.

### IAC Claim (6): Failure To Impeach Prosecution Witnesses

Petitioner states, "The trial Defense Attorney . . . failed to impeach damaging prosecution witnesses  . . . ."  *Doc. 1* at 11.  Petitioner does not, in the body of his petition, identify this missed impeachment.  However, in an attached exhibit he includes notes on the written record of the trial and cross-examination which shed some light.  He identifies two points at which he apparently thinks defense counsel might have impeached the prosecution's witnesses due to their lack of clarity on two points: (1) whether a particular ashtray had cocaine in it and (2) where exactly the foil packets found in Petitioner's residence were located.  *See doc. 1*, Ex. 3 at 3-4.

As with the other ineffective assistance claims raised in the state habeas petition, the state court denied habeas relief due to a failure to establish prejudice for the alleged ineffectiveness of counsel.  *Doc. 1*, Ex. G, Att. 11.  This ruling was not unreasonable.

While it appears from the written record of the trial that the prosecution's witnesses were unclear on these two points, they were minor points.  As outlined above, the evidence of intent to distribute was significant.  *See supra* at 31-32.  Whether a particular ashtray contained cocaine was irrelevant to that key issue.  With respect to the drug paraphernalia charge, it is undisputed that several other items of drug paraphernalia were present in the home.  So, even assuming Defense Counsel could have presented more pointed cross-examination regarding the ashtray, it is not unreasonable to conclude there was no prejudice for his failure to do so.

As for the foil packets, the testimony for the state is not ambiguous as to whether foil packets were present.  *Trial* at 1:24-1:28.  The mere presence of these items which the testimony demonstrated was used for the packaging of small amounts of crack cocaine for distribution (in a home where Petitioner possessed a large amount of crack cocaine) supported the state's argument that Petitioner intended to distribute.  *See Trial* at 1:34-1:35.  The precise location or condition of the foil packets is much less important.  So, even assuming Defense Counsel could have presented more pointed cross-examination regarding the foil packets, it is not unreasonable to conclude there was no prejudice for his failure to do so.

Under these facts, the state court's rejection of the claim regarding insufficient

impeachment was not unreasonable.[9]  I recommend that it be dismissed.

### IAC Claim (8): Failure To Challenge Grand Jury Testimony

Petitioner states, "The Trial Defense Attorney's failure to challenge Grand Jury testimony caused improper testimony to be entered into trial record.  Defendant was originally charged with manufacturing a controlled substance, then later charged with Trafficking.  The Manufacturing charge was dropped."  *Id*. at 11, 12.  Petitioner does not provide any further facts or argument regarding this claim.

As discussed earlier, Petitioner claims that he "was improperly charged with trafficking cocaine by possession with intent to distribute, after he was originally charged erroneously with manufacturing the drug."  *Doc. 1* at 4.  I found this claim to be without merit and recommended its dismissal.  The instant claim appears to be the "ineffective assistance" version of that substantive claim.[10]  As the substantive claim is without merit, Petitioner cannot establish that his counsel was ineffective for allowing the alleged error to occur.

The state court's rejection of this claim was not unreasonable.  I recommend that

---

[9] In addition to failing to establish prejudice, this claim also clearly does not meet the first Strickland prong.  Given the relative insignificance of these factual disputes, a reasonable trial attorney may wish to leave such testimony ambiguous.  Pressing the issue may simply give the witness an opportunity to clarify in a manner detrimental to the defense case.  Moreover, leaving such issues ambiguous may be the basis for an argument that the officers were less than attentive during the search.

[10] Of course, Petitioner also mentions improper testimony being entered into the record via the grand jury.  Because Petitioner has failed to identify the testimony to which he refers, that allegation is insufficient to merit habeas relief.  Moreover, at a grand jury proceeding, a defendant's lawyer does not have the right to challenge testimony.  *See* N.M.S.A. 1978 § 31-6-4(D).

it be dismissed.

### IAC Claim (9): Failure To Request Lesser-Included Offense Instructions.

Petitioner states, "The Defendant's Attorney did not request from the court a lesser-included offense [instruction] as in misdemeanor possession, which would have greatly reduced the amount of time the court would have been able to sentence the Defendant." *Doc. 1* at 12.

Based on the record of the case, Plaintiff is mistaken.  Defense's requested instruction ten, given to the jury as instruction eight (*R.P.* at 74), stated:

> If you should have a reasonable doubt as to whether the Defendant committed the crime of "trafficking a controlled substance, to wit: cocaine, by possession with intent to distribute" you must proceed to determine whether the Defendant committed the included offense of "possession of a controlled substance, to wit: cocaine."

*R.P.* at 120.

Because the factual basis of this claim is controverted by the record, I find that it lacks merit.  Therefore, I recommend that the Court dismiss this claim with prejudice.

### IAC Claim (10): Failure to File an Appeal on Behalf of Petitioner

Petitioner states that he asked Defense Counsel to file a notice of appeal immediately after the jury trial.  *Doc. 1* at 18.  Petitioner claims that after Defense Counsel delayed in filing a notice of appeal that Petitioner then filed it himself, and that counsel later, shortly before the time to file would expire, filed a docketing statement

which purported to serve the function of an appeal.  *Id.*  Petitioner believes that Defense

Counsel would not have filed anything had Petitioner not prompted him repeatedly

and contacted the courts on the matter.  *Id.*  In any case, the New Mexico Court of

Appeals heard his appeal and ruled on it.  *See doc. 1*, G, Att. 6.  Regardless of whether

Defense Counsel would have timely filed an appeal if not for special efforts on the part

of Petitioner, counsel did timely file the appeal and the New Mexico Court of Appeals

heard the appeal and ruled on it.  Consequently, he can show no prejudice from the

conduct of his counsel with respect to the appeal.  Therefore, the state court's rejection

of this claim was not unreasonable.  I recommend that it be dismissed.

### Claim (6): Prosecutorial Misconduct

Petitioner claims that the prosecutor behaved inappropriately in two ways: (1)

the prosecutor misled the jury by repeatedly stating that the amount of cocaine was

consistent with trafficking; (2) the prosecutor repeatedly stated that the cocaine was

wrapped in foil packets, despite the fact that the witnesses said it was not. [11]  *Doc. 1* at

21-23.

Petitioner first raised this claim in his state habeas petition.  *Doc. 1*, Ex. G, Att. 10

at 3.  The state district court rejected it explaining:

---

[11]"During Jury Trial, Police Detectives were questioned by Prosecutor as to <u>whether cocaine</u> was <u>wrapped in foil packets</u>.  Police <u>Detectives</u> <u>testified</u> "<u>NO</u>", the cocaine was <u>NOT wrapped in foil</u>.

"<u>Throughout the trial the Prosecutor misled the Jury by stating that cocaine was wrapped in foil packets</u>." (*Doc. 1* at 22, 23.)

Petitioner's assertions establish no more than a mistake that could have been knowing or could have been negligent.  In any event, the jury was instructed that statement of the lawyers are not evidence and their verdict was consistent with the evidence admitted during trial.

*Doc. 1*, Ex. G, Att. 11 at 1.

"For prosecutorial misconduct to rise to the level entitling a petitioner to federal habeas relief, it must either have violated a specific constitutional right, or 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Bodine v. Warden of Joseph Harp Correction Ctr.*, 217 Fed.App'x. 811, 814 (10th Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

While the prosecutor did make the statements complained of by Petitioner, those arguments were supported by witness testimony.[12]  Because the prosecutor's arguments were supported by witness testimony, there was nothing improper about making them. Therefore, the state court's rejection of this claim was not unreasonable.  I recommend that it be dismissed.

### Claim (7): Judicial Bias

Petitioner claims that the trial and sentencing judge, Judge Ritter, was not a fair and impartial judge.  To establish this bias, Petitioner argues the following: (1) the trial judge was biased against Petitioner on account of a previous civil case involving

---

[12] "In my training and experience, this amount of crack cocaine on one person is indicative of trafficking." Trial at 11:23:41.

Prosecutor: "There's a foil wrapper with crack cocaine in it, correct? What we suspect to be crack

Petitioner; (2) "The trial Judge made bias [sic] comments during presentencing and did

not allow the Defense a Motion for Continuance of the Sentencing so that a

Presentencing Report could be prepared . . ."; (3) "The Trial Judge denied the

Defendant's Motion for a Continuance of the Sentencing Hearing . . . ."; (4) "The Trial

Judge dismissed the Defendant's claim to have a serious Medical Condition by stating

that he had seen a picture of the Defendant in the local Newspaper with a cigarette in

his mouth at time of arrest . . . ; (5) The Trial Judge commented about the Defendant by

expressing displeasure in what he perceived during Jury Trial as the Defendant's

malingering in regard to Defendant's lung disease"; (6) The Trial Judge had a

preconception about the Defendant's prior charges. . . The preconception was that

Defendant was convicted of prior felonies. . ." *Doc. 1* at 24-25.

Petitioner raised the issue of judicial bias in both his direct appeal and in his state

habeas petition.  In the direct appeal, the New Mexico Court of Appeals rejected the

claim stating that: (1) There was "no abuse of discretion in refusing to grant a

continuance to obtain a pre-sentence report," (*doc. 1*, Ex. G at 10); and (2) "It does not

appear that the court prejudged anything." *Id.* at 11.  In the state habeas proceeding, the

court rejected the claim explaining that:

> Petitioner claims that the trial judge was not fair and impartial because the
> same judge presided over a civil case to which Petitioner was a party.  The

---

cocaine? " Witness: "Yes. Yes, sir."  Trial at 1:34.

> applicable law establishes that presiding over more than one case to which
> a person is a party is not an adequate basis to establish partiality.

*Doc. 1*, Ex. G, Att. 11.  In neither state proceeding did Petitioner expressly argue that the

judicial bias violated his due process rights under the federal constitution.  Nonetheless,

in reviewing the cases cited by the state courts when rejecting this claim, it is apparent

that they were rejecting state and federal due process claims of judicial bias.

Consequently, Petitioner's judicial bias based on his federal due process rights has been

exhausted before the state courts and rejected by them.

"To state a due process claim that a judge was biased, defendant must show

either that actual bias existed, or that an appearance of bias created a conclusive

presumption of actual bias."  *United States v. Lowe*, 106 F.3d 1498, 1504 (10th Cir. 1997).

"In general, the standard for evaluating whether a habeas petition alleges judicial bias

amounting to a denial of due process is whether the judge was actually biased or

prejudiced against the petitioner."  *Nichols v. Sullivan*, 867 F.2d 1250, 1254 (10th Cir.

1989) (internal quotation and citation omitted).  "The test for assessing whether the

likelihood of or appearance of bias is so great as to be constitutionally intolerable is

whether the judge [is] unable to hold the balance between vindicating the interests of

the court and the interests of the accused."  *Id.*

The facts on which Petitioner bases his judicial bias claim do not satisfy this high

standard.  Certainly, Petitioner has failed to show that the state courts' ruling that he

did not satisfy this standard was unreasonable.  The fact that the trial judge had

presided over Petitioner's civil child support case does not make him *per se* biased.  In

fact, it would not be improper for the judge to use information from that prior

proceeding.  *See Litely v. United States*, 510 U.S. 540, 551 (1994) ("Also not subject to

deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a

result of what they learned in earlier proceedings.").  Obviously, the judge's denial of

the continuance of the sentencing hearing is not evidence of bias because adverse

rulings cannot establish bias.[13]  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).  With

respect to Petitioner's health complaints, Judge Ritter was clearly unwilling to be lenient

due to those health problems.  Judge Ritter was unsympathetic with Petitioner's lung

problems given that Petitioner was a smoker.  This reaction is not impermissible bias,

but, instead, a common sense reaction.  As the Supreme Court has stated,

"[i]mpartiality is not gullibility.  Disinterestedness does not mean child-like innocence."

*Liteky*, 510 U.S. at 551.  While Judge Ritter specifically referenced the photograph of

Petitioner smoking in the newspaper, which is arguably an extrajudicial source of

information, he could have just as easily relied upon the trial, in which Petitioner

implicitly conceded that he was a crack user by arguing that the crack cocaine was for

---

[13] It is also notable that, after hearing the same excuses Petitioner gave to the trial judge about his failure to appear at the pre-sentence interview, the New Mexico Court of Appeals concluded that Judge Ritter's denial of the motion for continuance was not an abuse of discretion.  *Doc.* 1, Ex. G, Att. 6 at 10. Thus, pointing to this ruling as evidence of a personal bias is particularly weak.

personal use and not for sale.  *Trial* at 10:49-10:51 (Defense's Opening Statement); 3:09-

3:25 (Defense's Closing Statement).  Finally, Petitioner's concerns about the judge

incorrectly holding prior felony convictions against him have no foundation.  At no

point in the sentencing hearing does the judge, or anyone else for that matter, reference

prior felony convictions.  *Sentencing Hr'g* at 9:27-9:30.

Petitioner has neither established that the trial judge was improperly biased

against him or that the appearance of improper bias was so great that it must be

presumed.  As such, the state court's rejection of the judicial bias claim was not

unreasonable.  I recommend that it be dismissed

### Claim (8): Insufficient Access to Legal Materials

Petitioner claims that he was not granted sufficient access to legal materials while

in prison.  *Doc. 1* at 26.[14]  This is not a proper claim to raise in a habeas suit.  This claim

relates to conditions of confinement, and therefore is not cognizable in a habeas corpus

petition.  *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("constitutional claims that

merely challenge the conditions of a prisoner's confinement . . . fall outside of" the core

of habeas corpus"); *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000) (Federal claims

challenging the conditions of confinement generally do not arise under § 2241);

---

[14]"The Text (28 U.S.C. 2254) requested by Petitioner has not been provided by the Central New Mexico Correctional Facility to the Petitioner for his use.  This limited Petitioner's ability to prepare his Appeals and Habeas Corpus Petition and his ability to establish conditions where U. S. Constitutional Rights have been denied." *Doc. 1* at 26.

*McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (A habeas corpus petition attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement; while a civil rights action, in contrast, attacks conditions of the prisoner's confinement).  Thus, should Mr. Richwine wish to pursue this claim, he would need to file a separate action under 42 U.S.C. § 1983.  Therefore, I recommend that the Court dismiss this claim without prejudice.

**IV.    CONCLUSION**

After careful review of each of Petitioner's claims under the applicable standard, I find that none of them has merit and recommend the Court dismiss all claims.  I recommend that they be dismissed with prejudice with the exception of Petitioner's claim regarding insufficient access to legal materials which I recommend dismissing without prejudice so that Petitioner may seek relief, if appropriate, in a claim under § 1983.

**Wherefore, IT IS HEREBY RECOMMENDED THAT the Court grant**

Respondent's Motion to Dismiss (*doc. 9*), and that the Court dismiss Petitioner's petition

for a writ of habeas corpus.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

57